Filed 1/26/24  P. v. Hernandez CA2/2

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>  v.<br><br>APOLONIO CHAIDEZ HERNANDEZ,<br><br>        Defendant and Appellant. | B321315<br><br>(Los Angeles County<br>Super. Ct. No. A792694) |

APPEAL from an order of the Superior Court of Los Angeles County.  Norman J. Shapiro, Judge.  Affirmed.

Sharon Fleming, by appointment of the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Steven D. Matthews and Gary A. Lieberman, Deputy Attorneys General, for Plaintiff and Respondent.

_____

Defendant and appellant Apolonio Chaidez Hernandez appeals from the trial court's order denying his petition for resentencing under Penal Code section 1172.6[1] (former § 1170.95).[2]  He argues that insufficient evidence supports the trial court's conclusion that he aided and abetted a first degree murder, and that the trial court improperly relied on the factual history from our prior appellate opinion.

We affirm.

## FACTS AND PROCEDURAL BACKGROUND

### I.  The Murder, Trial, and Conviction

"[O]n the evening of November 17, 1986," defendant, Oscar Rivera (Rivera), and Roque David Gaitan (Gaitan) were involved in the fatal "stabb[ing] and sho[o]t[ing] . . . [of] fellow gang member, Robert Wong [(Wong)], in apparent retaliation for his informing others of the group's criminal activities."  (*People v. Gaitan* (Aug. 3, 1990), B035498 [nonpub. opn.] (*Gaitan*).)

"The day before the shooting defendant[,] [Rivera, and Gaitan] had met at the home of Rivera's brother in Highland Park and agreed among themselves to 'take care of' Wong" "in apparent retaliation for his informing others of the group's criminal activities."  (*Gaitan, supra*, B035498.)  Nancy Gomez (Gomez), who was also present at the house, heard Rivera tell

---

[1]     All further statutory references are to the Penal Code unless otherwise noted.

[2]     When defendant filed his petition, the relevant resentencing statute was numbered section 1170.95.  Effective June 30, 2022, section 1170.95 was renumbered section 1172.6, with no change in text.  (Stats. 2022, ch. 58, § 10.)  For simplicity, we refer to the section by its new numbering.

defendant "'let's go hunting'" shortly before the two men left the house.  When they returned 25 minutes later, defendant told Gomez that they had gone looking for Wong at his grandmother's house, but hadn't found him.

"Some 24 hours later," the three men and Gomez "once again assembled at the home of Rivera's brother and then set out to retrieve several shotguns from a hiding place in Elysian Hills." (*Gaitan, supra*, B035498.)  They travelled in defendant's car.

Later, defendant drove "the group . . . to an apartment building in Highland Park where they joined several other gang members." (*Gaitan, supra*, B035498.)  "When Wong arrived sometime later, Gaitan escorted Gomez away from the scene and directed her to wait in a friend's parked car.  He then joined Rivera and the two began striking Wong in the face and body.  Although Gomez heard Wong protest that he had not 'snitched' or otherwise been disloyal, defendants ignored his pleas and continued the beating.  When Gomez attempted to intervene, Gaitan ordered her to remain in the car.  [Defendant], who had been working nearby on his own automobile, then approached Gomez and prevented her from further interfering with the fight.

"From her vantage point, Gomez could see that Wong was bleeding badly and that he had been knocked to the ground.  As the car in which she was sitting drove slowly away from the scene, Gomez saw Rivera shoot Wong in the back of the head with an 18-inch sawed-off shotgun.  Gaitan, who was standing next to Rivera, made no attempt to intervene." (*Gaitan, supra*, B035498.)

Another witness, Gilbert Martinez, reported to police that defendant "was with . . . Gaitan when they killed Robert Wong."

Martinez also claimed that defendant pulled him off of Gaitan during the attack.[3]

"Within minutes, both men ran to [defendant's] waiting vehicle and fled the area. Gomez subsequently joined [the three of them] and the group proceeded to Gaitan's home where they remained for the next several hours. While en route to their destination, Gomez overheard Gaitan remark [to defendant] that Wong wouldn't 'go down' and that he had to be stabbed several times before succumbing." (*Gaitan, supra*, B035498.)

"At trial, forensic experts estimated that Wong died sometime between 4:00 p.m. and 8:00 p.m. on November 17th after suffering nearly 60 different stab wounds and a close range shotgun blast to the base of the head. Although defendant[], [Rivera and Gaitan] elected not to testify, the defense presented several different witnesses who each claimed that the crime had been perpetrated by a rival gang member." (Fn. omitted.) (*Gaitan, supra*, B035498.) "Defense counsel also argued to the jury that Gomez," who was initially coerced into talking to the police but eventually became a cooperative witness, "was . . . inherently unreliable[.]" (*Gaitan, supra*, B035498.)

The jury convicted defendant, Rivera, and Gaitan of first degree murder. The jury also found true the allegations that Rivera personally used a firearm (§ 12022.5, subd. (a)), that Gaitan and Rivera personally used a knife (§ 12022, subd. (b)), and that a principal to the crime was armed with a firearm (§ 12022, subd. (a)). Defendant was sentenced to a term of 26 years to life in state prison.

---

[3] Martinez referred to defendant and Gaitan by their nicknames in the gang.

4

On direct appeal, we affirmed the conviction. (*Gaitan, supra*, B035498.)

## II.  Section 1172.6 Petition

In January 2019, defendant filed a petition for resentencing under section 1172.6. One month later, he filed another copy of the same petition. The trial court subsequently appointed counsel.

In August 2019, the People opposed the petition, arguing that defendant was ineligible for relief because he was a direct aider and abettor. On November 4, 2019, defendant asked the trial court to issue an order to show cause pursuant to section 1172.6, subdivision (c).

At a hearing on November 6, 2020, the trial court confirmed that it had received a CD filed by the prosecution containing the transcripts from the trial.[4] The matter was continued several times. In the interim, the trial court granted defendant's request and issued an order to show cause.

On May 24, 2022, the matter proceeded to an evidentiary hearing. The trial court began by saying that it had "look[ed] over the records[,]" and noted that the 1988 trial had taken place in the same courtroom as the present hearing.

Neither side proffered any new evidence, but the People submitted "a new CD" compiling "trial transcripts and the clerk transcripts" from the 1988 proceedings. The trial court noted that "a lot of it or a good portion of it is part of the file."

_____

[4]     In the reporter's transcript, the date of this hearing has been handwritten in as November 6, 2019. However, the corresponding minute order is dated November 6, 2020. In his opening brief, appellant agrees that 2020 is the correct year; the People's briefing does not address this discrepancy.

5

The trial court said that "[w]hen it first received this file, which was some time ago, I made some initial notes." The court proceeded to summarize these notes, allowing frequent interruptions from defense counsel.

The trial court began by saying that it "recognized immediately that [defendant] was not the shooter or the stabber. He was at the scene. . . . [¶] . . . [and] Rivera runs to a vehicle which [defendant] is driving and fleeing." The court noted that defendant "was present and drove to the scene and drove away from the scene."

The trial court continued, "the next notes I made . . . . [¶] . . . The decedent was shot and stabbed in retaliation for possibly informing. [¶] . . . [A group], includ[ing] [defendant], met and agreed to take care of Wong."

The trial court then said "[n]ow I have here, 'set out to retrieve several shotguns. Defendant[] joined by . . . Gomez and other gang members. Went to Highland Park. Co-defendant[s] . . . struck Wong. [Defendant] approached Gomez, prevented her from either being or interfering in the fight. . . . [¶] . . . Gomez saw Rivera shoot Wong. Gaitan is standing next to Rivera. . . . Rivera and Gaitan ran to [defendant's] vehicle and fled. [¶] I have here, page 15, 'Defendants murdered Wong in retaliation. The defendants were willing to participate in the killing[,] or defendant was willing to participate in the killing. Defendants are all part of the same gang.'"

The trial court summarized, "[m]y conclusion was: [defendant] was involved in planning, went to scene and left with the co-defendants from the scene. [¶] I have pages 17 and 18."

After hearing extensive argument from both sides, the trial court ruled that defendant was "a participant going to and

6

leaving. [He] obtained a weapon. There is evidence to support that there was an agreement. [He] aided and abetted in the object of the agreement." The court then denied defendant's petition.

Defendant's counsel said that he "under[stood] [the] ruling," but intended to appeal. The trial court indicated that it understood defendant's position, then returned to the subject of the hearing.

The trial court said, "going back to my original notes, when I looked at this matter, [defendant]'s involvement in this is not simply somebody who unknowingly gave a couple people a ride to a location and then nothing else to do with it, and lo and behold, someone got shot." The court found that, in this case, "[t]here was a relationship between the parties. There was activity before and there was activity after the scene. I don't know about the speakers. Maybe he wanted to look busy."

Defendant timely appealed.

## DISCUSSION

### I.    Applicable Law

"Section 1172.6 provides a mechanism whereby people 'who believe they were convicted of murder for an act that no longer qualifies as murder following the crime's redefinition in 2019[ ] may seek vacatur of their murder conviction and resentencing by filing a petition in the trial court.' [Citation.]" (*People v. Arnold* (2023) 93 Cal.App.5th 376, 382.)

As is relevant here, in order to obtain resentencing relief, a petitioner must allege that (1) an information was filed against him allowing the prosecution to proceed under a theory of murder under the felony murder rule, the natural and probable consequences doctrine, or any "other theory under which malice

7

is imputed to a person based solely on that person's participation in a crime" (§ 1172.6, subd. (a)(1)); (2) the petitioner was convicted of murder (§ 1172.6, subd. (a)(2)); and (3) he could not now be convicted of murder as presently defined. (§ 1172.6, subd. (a)(3)).

If the trial court determines that the petitioner has made a prima facie showing of entitlement to relief, it must issue an order to show cause and hold an evidentiary hearing. (§ 1172.6, subd. (c).) At the evidentiary hearing, the parties may rely upon evidence in the record of conviction or new evidence to demonstrate whether the petitioner is eligible for resentencing. (§ 1172.6, subd. (d)(3).) The prosecution bears the burden of proving, "beyond a reasonable doubt, that the petitioner is ineligible for resentencing." (§ 1172.6, subd. (d)(3).) If the prosecution cannot meet its burden, and the petitioner prevails, he is entitled to vacatur of the murder conviction and resentencing as set forth in section 1172.6, subdivision (e).

## II. Standard of Review

Relying primarily on *People v. Vivar* (2021) 11 Cal.5th 510 (*Vivar*), Defendant urges us to review his appeal de novo, since the trial court heard "no new evidence, and instead base[d] its ruling on a 'cold record.'"[5] *Vivar* is inapposite, as it involved whether there had been a sufficient showing of prejudice to vacate a conviction by those facing negative immigration consequences—a ruling that was predominantly a question of

---

[5] Defendant also argues that "de novo review is required because it appears the [trial] court based its decision on [the appellate] court's prior opinion rather than a thorough review of the trial record." (Bolding omitted.) As explained in section III.B., *infra*, we disagree with the premise of defendant's argument; the trial court did properly review the trial record.

law.  (*Id.* at pp. 517, 524.)  Here, the issue is whether defendant harbored the mental state required for a murder conviction under section 188 or 189 as amended, which is predominantly a question of fact.  (See § 1172.6, subd. (d); *People v. Clements* (2022) 75 Cal.App.5th 276, 296–301 (*Clements*), as mod. on den. of rehg., Mar. 16, 2022.)  Moreover, the holding in *Vivar* was expressly limited to proceedings pursuant to section 1473.7.  (*Vivar*, *supra*, at p. 528, fn. 7.)

Defendant acknowledges but disagrees with the decisions of the Courts of Appeal that have distinguished *Vivar* and held that, on appeal, the trial court's ruling under section 1172.6 is to be reviewed for substantial evidence.  (See, e.g., *People v. Werntz* (2023) 90 Cal.App.5th 1093, 1109–1110; *Clements*, *supra*, 75 Cal.App.5th at pp. 296–301.)  We agree with the reasoning of the foregoing cases and decline to apply a de novo review.

Under the substantial evidence standard of review, we examine the entire record in the light most favorable to the judgment below.  (*People v. Becerrada* (2017) 2 Cal.5th 1009, 1028), "examin[ing] the record independently for "'substantial evidence—that is, evidence which is reasonable, credible, and of solid value'" that would support a finding beyond a reasonable doubt."  (*People v. Banks* (2015) 61 Cal.4th 788, 804).

Reversal on a substantial evidence ground "is unwarranted unless it appears 'that upon no hypothesis whatever is there sufficient substantial evidence to support [the conclusion of the trier of fact].'"  (*People v. Bolin* (1998) 18 Cal.4th 297, 331.)

III.   **Analysis**

Defendant raises two arguments against the order denying his section 1172.6 petition, namely that (1) insufficient evidence supports the trial court's conclusion that he aided and abetted a

9

first degree murder, and (2) the trial court erroneously relied on the factual history in our prior opinion.  We address each issue in turn.

### A.    *Substantial Evidence*

The trial court denied defendant's petition upon finding that he aided and abetted his confederates in the perpetration of murder.  "'Someone *aids and abets* a crime if he or she knows of the perpetrator's unlawful purpose and he or she specifically intends to, and does in fact, aid, facilitate, promote, encourage, or instigate the perpetrator's commission of that crime.'  [Citation.]" (*People v. Estrada* (2022) 77 Cal.App.5th 941, 949, fn. 6.)

Here, the record contains evidence that defendant knew of the perpetrators' unlawful purpose.  On the day before the murder, defendant and the shooter, Rivera, discussed "tak[ing] care of" Wong for turning on the gang.  Defendant went out with Rivera after the latter said, "[l]et's go hunting[,]" and, upon returning, admitted that they had gone out looking for Wong.

There is also ample evidence that, knowing of Rivera and Gaitan's intent, defendant facilitated their fatal encounter with Wong and intended to help them commit the murder.  Defendant drove Rivera and Gaitan first to pick up weapons, and then to go to the site of the murder.  One witness, Gomez, claimed that defendant stopped her from intervening when Rivera and Gaitan attacked the decedent; another, Martinez, told police that defendant stopped him from restraining Gaitan.  Finally, defendant drove Rivera and Gaitan away from the scene of the crime after Rivera shot defendant.

Defendant raises three arguments against our conclusion. First, he argues that there is no evidence that defendant intended to kill, rather than nonfatally confront, Wong.  To the

10

contrary, the record contains evidence showing that defendant knew that Rivera and Gaitan wanted to punish Wong for allegedly betraying their gang, had driven them to get guns shortly before encountering Wong, and stopped bystanders from interfering during the attack. (See *People v. Schell* (2022) 84 Cal.App.5th 437, 443 [sufficient evidence of intent where a defendant knew that "'dangerous weapons were being used against [the victim], and intended to stop [the victim] from escaping or defending himself by helping the perpetrators to surround and hit him'"].)

Second, defendant argues that he did not act to aid or abet the murder. For example, defendant contends that by stopping Gomez when she tried to call off Rivera and Gaitan, he was "at most . . . trying to keep Gomez out of harm's way, not . . . trying to assist" the killers. Similarly, he contends that merely driving Rivera and Gaitan to and from the scene of the crime is insufficient to "make appellant guilty of first degree murder[.]" Although defendant's interpretation of his actions is plausible, on review for substantial evidence, we "must construe the record in the light most favorable to the judgment and presume "'the existence of every fact the jury could reasonably have deduced from the evidence.'"" (*People v. Mendez* (2019) 7 Cal.5th 680, 702.) As described above, the trial court's contrary conclusions can reasonably be inferred from the record; therefore, they must stand.

Third, defendant urges us to consider evidence in the record that undermines testimony supporting the trial court's conclusion, including that Gomez was not entirely forthcoming with police about her testimony and that Martinez was under the influence of drugs when talking to police. Again, defendant runs

11

up against our standard of review, under which "our job is to determine whether there is any substantial evidence, *contradicted or uncontradicted*, to support a rational fact finder's findings beyond a reasonable doubt." (*Clements*, 75 Cal.App.5th at p. 298 [italics added].) Having found substantial evidence in the record to support the trial court's denial of defendant's petition, we must affirm.

> **B.** *Factual History*

Section 1172.6, subdivision (d)(3) provides that the trial court may "consider the procedural history of the case recited in any prior appellate opinion." The specificity of this provision "indicates the Legislature has decided trial judges should not rely on the factual summaries contained in prior appellate decisions when a section [1172.6] petition reaches the stage of a full-fledged evidentiary hearing." (*Clements, supra,* 75 Cal.App.5th at p. 292.)

Defendant argues that the trial court violated both section 1172.6 and his constitutional due process rights by "improperly rel[ying] on this court's prior opinion." Defendant makes much of the trial court's references to the "initial notes" it made in this matter, arguing that these notes were "derived from the prior appellate opinion" because "the very language used by the court closely tracks" the opinion.

But the trial court expressly said that it made the notes "[w]hen [it] first received this file, which was some time ago." Read in context with the court's later statements, it seems that the word "file" refers to, among other things, the first CD of trial transcripts that the prosecution filed more than 18 months before

the hearing. This suggests that the notes came from the court's initial review of the trial transcripts.[6]

Moreover, the trial court expressly stated that it had "look[ed] over the records" before the hearing. And its comments included many details that are not in the prior appellate opinion, such as the 1988 trial having taken place in the same courtroom as the 2022 hearing, the defendant driving Rivera and Gaitan to the scene of the crime, and defendant working on the speakers in his car in the lead-up to the fight.[7]

Overall, the record demonstrates that the trial court probably relied on its independent review of the trial record when making factual findings in this case; at most, it may have borrowed language from our prior opinion "to quickly summarize the broader factual history of defendant's case." (*Arnold*, *supra*, 93 Cal.App.5th at p. 392.) "In the interest of avoiding future confusion on this issue, we note that when issuing orders from a section 1172.6 evidentiary hearing, the trial court should make

---

[6]    The trial court did reference page numbers in its notes, which both parties suggest refer to the page numbers of the prior appellate opinion. We are less sure about the source of these page numbers, as the trial court ends with a reference to page 18; the prior appellate opinion is only 17 pages long. (*Gaitan*, *supra*, B035498.)

[7]    The prior appellate opinion says that defendant went with Rivera and Gaitan to the scene of the crime, but does not say who drove; similarly, it notes that defendant was working on his own automobile when Rivera and Gaitan jumped Wong, but does not specify that he was fixing the car's speakers. (*Gaitan*, *supra*, B035498.) The opinion makes no reference whatsoever to the courtroom in which the 1988 trial took place.

13

clear that it is relying on facts taken from the evidence before it and not from prior appellate opinions." (*Arnold, supra,* at p. 392.)

## DISPOSITION

The trial court's order is affirmed.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS.


_____, J.
ASHMANN-GERST


We concur:


_____, P. J.
LUI


_____, J.
HOFFSTADT